AT & T COMMUNICATIONS SYS-
TEMS, a California Corpora-
tion, Plaintiff–Appellee,

v.

PACIFIC BELL, a California
Corporation, Defendant–
Appellant.

No. 98–16047.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1999.

Filed Feb. 14, 2000.

**1184**

David P. Discher and Kevin M. Fong, Pillsbury Madison & Sutro, San Francisco, CA, for defendant-appellant.

Terry J. Houlihan, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for plaintiff-appellee.

Before: GOODWIN, SCHROEDER, and GRABER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from a district court judgment reviewing a decision of the California Public Utilities Commission (CPUC) under the Telecommunications Act of 1996, Pub.L. 104–104, 110 Stat. 56 (the Act). The Act calls for judicial review by federal courts of state utility commission decisions approving interconnection agreements between competing local telecommunication carriers who must share networks and other facilities. The agreement at issue is between AT & T Communications of California (AT & T) and Pacific Bell and was arbitrated and approved by the CPUC under the provisions of the Act.

The critical jurisdictional issue before us is whether the petitioner, AT & T, was required to exhaust administrative remedies, established by California law as prerequisites to review of CPUC orders by California state courts, before seeking judicial review in federal court. We hold that exhaustion is not required, because the structure of the federal statute shows that Congress did not intend to incorporate varying state exhaustion requirements into federal law as a prerequisite to federal court review. We affirm the district court's decision, reaching the same result on different reasoning.

The only substantive issue raised by Pacific Bell on appeal relates to the validity of the requirement imposed by the CPUC that AT & T pay switched access charges as part of its payment for the use of unbundled network elements. We also affirm the district court's holding that such a requirement was contrary to federal law.

**STATUTORY AND PROCEDURAL BACKGROUND**

The Telecommunications Act of 1996 was intended to increase competition in all telecommunications markets, including local telephone exchange markets. *See U.S. West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1116 (9th Cir.1999). With regard to local markets, Congress' goal was to replace "the long-standing regime of state-sanctioned monopolies" with a competitive market structure. *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 371, 119 S.Ct. 721, 726, 142 L.Ed.2d 835 (1999). Recognizing that competitors would have difficulty replicating local network facilities, however, Congress imposed certain duties on incumbent local exchange carriers (ILECs)-including a duty to share local networks with competitors.

In this case, AT & T sought entry as a competitor into Pacific Bell's local exchange market. Pursuant to the Act, AT & T and Pacific Bell first entered into negotiations in an effort to arrive at an agreement that provided AT & T with access to Pacific Bell's network and services. *See* 47 U.S.C. § 252(a). Because the parties were unable to arrive at an agreement, AT & T petitioned the CPUC to arbitrate the parties' unresolved issues. *See* 47 U.S.C. § 252(b). The arbitrator issued a final report on October 31, 1996,

and, as required by the Act, the parties submitted the arbitrated agreement to the CPUC for approval on November 12, 1996. *See* 47 U.S.C. § 252(e). The CPUC issued a decision approving the arbitrated agreement, with certain modifications, on December 9, 1996. AT & T thereafter sought review in federal district court pursuant to section 252 of the Act, which permits judicial review of an approved agreement to determine "whether the agreement or statement meets the requirements of section 251 of this title and this section." 47 U.S.C. § 252(e)(6).

Under California law, state courts do not have jurisdiction to review a CPUC decision unless the party seeking review has petitioned the CPUC for rehearing within 30 days of issuance of the offending decision. *See* Cal. Pub. Util.Code § 1731(b). The Act does not expressly refer to exhaustion of state administrative remedies.

In the district court, the defendant, Pacific Bell, moved to dismiss on the basis that AT & T had failed to petition the CPUC for rehearing, as required by California Public Utilities Code § 1731(b), before filing the instant action in federal court. The district court ultimately denied Pacific Bell's motion to dismiss, concluding that the Act required AT & T to exhaust state administrative remedies prior to seeking federal review, but that its noncompliance should be excused in the interest of fairness. The court also granted AT & T's motion for summary judgment on the merits.

## ANALYSIS

### A. Exhaustion

■ Pacific Bell contends that AT & T was required to comply with § 1731(b) of the California Public Utilities Code, which requires a party that is dissatisfied with a decision of the CPUC to file a petition for rehearing with the commission within 30 days of the decision. The district court held that the Act confers jurisdiction on the federal courts only to review final state agency decisions, and that the CPUC is permitted to define when a determination

becomes "final." Although the district court held that AT & T had technically violated the Act because it failed to exhaust state remedies by not petitioning for rehearing before the CPUC, the court also held that AT & T was entitled to be excused from the rehearing requirement because "requiring complete administrative exhaustion in these cases would completely and unfairly bar the parties from obtaining any review of the interconnection agreements at issue." The district court relied on *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–95, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), and *Morrison–Knudsen Co. v. CHG International, Inc.,* 811 F.2d 1209, 1223 (9th Cir.1987).

■ We agree with the district court's decision to permit judicial review in this case, but disagree with the district court insofar as it held that a "final" order for purposes of state review proceedings is a prerequisite to federal district court jurisdiction as established by the Act. In order to determine whether Congress intended litigants to exhaust state administrative remedies before obtaining federal court review, we must look to the congressional intent in enacting the statute. *See McCarthy v. Madigan,* 503 U.S. 140, 149–52, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *Patsy v. Board of Regents,* 457 U.S. 496, 513, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). It follows that unmet state exhaustion requirements bar federal court review only if Congress intended them to bar review. *See generally Utah Power & Light Co. v. Interstate Commerce Comm'n,* 747 F.2d 721, 744–45 (D.C.Cir.1984) (Ginsberg, J., concurring) (stating that "exhaustion requirements are imposed by the legislature that controls the reviewing authority whose jurisdiction is invoked, or by a tribunal superior to that authority, or by the authority itself, not by the forum of first resort whose determinations are subject to review.").

On the basis of the wording, structure, and purpose of the Act, we conclude that Congress did not intend all state procedur-

al requirements to be exhausted prior to judicial review by a district court. There are, as noted, three bases for this conclusion.

The first is the wording of the Act. The provision establishing federal jurisdiction to review state commission decisions provides that, "[i]n any case in which a State commission makes *a determination under this section*, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section." 47 U.S.C. § 252(e)(6) (emphasis added). Unlike the Administrative Procedure Act, which authorizes review only of "final agency action," 5 U.S.C. § 704, section 252 does not provide that there must be a "final" determination after exhaustion of all available remedies. It requires only that there be "a determination." A state commission's decision can be "a determination" even if it is subject to a request for rehearing so long as the decision is operational or binding on the parties in the absence of a request for rehearing. The CPUC's order of December 9, 1996, was "a determination" within the meaning of § 252(e)(6). It stated that the agreement between AT & T and Pacific Bell "is approved pursuant to the requirements of the Telecommunications Act of 1996" and that the parties' application for review "is closed."

Second, the strict timelines contained in the Telecommunications Act indicate Congress' desire to open up local exchange markets to competition without undue delay. As the Fourth Circuit recently noted, "Congress intended that competition under the Telecommunications Act take root 'as quickly as possible.'" *GTE South, Inc. v. Morrison*, 199 F.3d 733, 744 (4th Cir.1999) (citing H.R.Rep. No. 104–204, 104th Cong. 2nd Sess. at p. 89, (1996) U.S.Code Cong. & Admin.News pp. 10, 55). Section 252(e)(4), entitled "Schedule for Decision," provides in part:

If the State commission does not act to approve or reject the agreement within 90 days after submission by the parties of an agreement adopted by negotiation under subsection (a) of this section, or within 30 days after submission by the parties of an agreement adopted by arbitration under subsection (b) of this section, the agreement shall be deemed approved.

Once the agreement is deemed approved, the parties are free to seek judicial review pursuant to § 252(e)(6). Any state law allowance for rehearing of such an agreement that has been "deemed approved" cannot stand in the way of this federal provision. In addition, the FCC is required to preempt a state commission's jurisdiction and "assume the responsibility of the State commission" if a state commission "fails to act to carry out its responsibility under this section." 47 U.S.C. § 252(e)(5). California's rehearing provision does not fit within the scheme of federal judicial review contemplated by Congress.

Finally, the statute provides exclusively for federal court review and expressly forecloses state court review. *See* 47 U.S.C. § 252(e)(4) ("No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section."). This foreclosure-coupled with the strict time limits on state administrative actions-strongly militates against incorporation of state administrative proceedings that are necessary predicates for judicial review by the state courts. The structure of the Act reflects Congress' concern not only that the agreements be reviewed swiftly, but that the federal courts provide a uniform system for review once a state agency has ruled on a proposed interconnection agreement. Incorporation of varied state administrative exhaustion requirements is antithetical to both of these aims.

Pacific Bell counters that the wording of 47 U.S.C. § 252(e)(3), which provides that "nothing in this section shall prohibit a State commission from establishing or enforcing other requirements of State law in its review of an agreement, including re-

quiring compliance with intrastate telecommunications service quality standards or requirements," indicates that Congress intended state procedural requirements to be prerequisites to federal court review. Section 252(e)(3), however, relates to the authority of a state commission to enforce substantive requirements of state law in its review of local exchange agreements, as evidenced by the provided example. The section does not purport to relate to requirements for judicial review.

Pacific Bell also relies on 47 U.S.C. § 252(e)(5), the default provision requiring the FCC to assume responsibility of the interconnection agreement approval process if a state commission fails to carry out its responsibilities under the Act. That provision contains a time limitation on when the FCC must assume responsibility, but contains no specific time limits for FCC action. According to Pacific Bell, this difference suggests that Congress was not concerned about expediting administrative review of the agreement, but only with expediting the negotiation of such agreements. Section 252(e)(5), however, is not limited to negotiation of agreements. It gives the FCC authority to assume control of the negotiation process at any time, including at the negotiation, arbitration, or approval stages. The statute does not provide that the FCC is required to act within the deadlines imposed on state commissions, but Congress may in its sound discretion have felt less necessity to provide such specific requirements for a federal agency, which is under its exclusive legislative control, than it did for state agencies.

## B. Access Charges

■ Pacific Bell also challenges the district court's determination that the pricing of unbundled network elements contained in the interconnection agreement approved by the CPUC was contrary to the Act. The district court held that the inclusion of "switched access charges" (charges that an ILEC assesses when a competitor uses network elements to provide access to the competitor's local telephone customers for toll or long distance calls) was not sufficiently cost-based and therefore violated § 252(d)(1) of the Act. That section provides that the rate for network elements shall be based on the cost of providing the network element and may include a reasonable profit. *See* 47 U.S.C. § 252(d)(1).

■ This court need not determine whether switched access charges in this case met the requirements of 47 U.S.C. § 252(d)(1), however. That is so because an FCC regulation interpreting the Act now flatly prohibits the inclusion of access charges in the pricing of unbundled network elements. *See* 47 C.F.R. § 51.515(a). Although temporarily not in effect at the time of the district court's decision, 47 C.F.R. § 51.515(a) has since been reinstated by the Supreme Court. *See AT & T Corp.,* 525 U.S. at 376–85, 119 S.Ct. at 729–33. First promulgated by the FCC in its first interconnection order, *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* 11 F.C.C.R. 15499 (1996), the regulation provides that "[n]either the interstate access charges described in part 69 of this chapter nor comparable intrastate access charges shall be assessed by an incumbent LEC on purchasers of elements that offer telephone exchange or exchange access services." 47 C.F.R. § 51.515(a). Because the regulation promulgated by the FCC merely interprets the substantive provisions of the Act, it does not present retroactivity concerns. *See Farmers Tel. Co. v. FCC,* 184 F.3d 1241, 1250 (10th Cir.1999).

Pacific Bell's primary argument against application of 47 C.F.R. § 51.515(a) is that the charges allowed by the CPUC were not in fact switched access charges, but instead merely a cost-based proxy. This position is belied by the CPUC's decision approving the interconnection agreement and by the district court's opinion. Both written decisions identify the billing components at issue as switched access charges, and Pacific Bell does not appear to have argued otherwise before the dis-

trict court. It is clear that the interconnection agreement approved by the CPUC provided for switched access charges to be collected by Pacific Bell and that such charges are contrary to regulations passed by the FCC pursuant to its authority under the Act. Accordingly, such charges do not meet the requirements of the Act. *See* 47 U.S.C. § 252(e)(6). The district court properly so held.

AFFIRMED.