**AT & T COMMUNICATIONS OF the SOUTHERN STATES, INC., Plaintiff,**

**v.**

**GTE FLORIDA, INC., et al., Defendants.**

**No. 4:97CV300–RH.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Dec. 12, 2000.

---

David Lawson, Sidley & Austin, Washington, DC, Mark K. Logan, Smith Ballard Logan PA, Tallahassee, FL, Paul Race Bradshaw, Paul R. Bradshaw PA, Tallahassee, FL, for Plaintiff.

Harry R. Detwiler, Holland & Knight, Tallahassee, FL, Patrick F. Philbin, Kirkland & Ellis, Washington, DC, for GTE Florida Inc.

Diana Weaks Caldwell, David E. Smith, Florida Public Service Com'n State of Florida, Tallahassee, FL, for Florida Public Service Com'n.

David E Smith, Public Service Commission, State of Florida, Tallahassee, FL, Mark K Logan, Smith Ballard Logan, PA, Tallahassee, FL, Paul Race Bradshaw, Paul R. Bradshaw PA, Tallahassee, FL,

for The Commission of Florida Public Service Com'n.

### *ORDER ON MERITS*

HINKLE, District Judge.

This is another in a series of challenges under the Telecommunications Act of 1996, 47 U.S.C. §§ 251–52, to decisions of the Florida Public Service Commission with respect to the terms and conditions under which an incumbent local exchange carrier must provide services and make facilities and network elements available to a competitor. The new issues presented by this case include the respective rights of the incumbent and competitor to access charges paid by long distance carriers for terminating calls over local facilities; whether the incumbent's obligation to provide network elements to any competitor on the same terms available to any other competitor obligates the incumbent to make available to the competitor only the same overall agreement entered with the other competitor or instead allows the competitor to pick and choose specific terms of the agreement with the other competitor; the proper methodology for setting the incumbent's charges for operator and directory assistance services; and whether the incumbent must provide "number portability," that is, allow customers to change carriers without changing telephone numbers, by specified means. The case also presents additional issues that have been addressed in prior cases.

### *Background—The Statutory Framework*

Historically, local telephone service was provided in the United States on a monopoly basis by carriers regulated under state law by state public service commissions. Congress fundamentally changed that approach by enacting the Telecommunications Act of 1996. The Act imposes on local carriers, as a matter of federal law, various duties designed to foster competition. The Act allows state commissions the option of taking a major role in implementing the Act's requirements.

The federal duties imposed on each "incumbent local exchange carrier"—that is, on each carrier who previously provided local service on a monopoly basis—include the obligation to sell local services at wholesale to any competing carrier for resale by the competing carrier to customers, the obligation to allow competitors to interconnect with the incumbent's facilities for the purpose of providing services to the competitor's own customers, and the obligation to make certain "network elements"—parts of its telecommunications system—available to competing carriers for their use in providing service to their own customers. These duties are described in greater detail in *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 112 F.Supp.2d 1286 (N.D.Fla.2000).

The Act also imposes on each incumbent the duty to negotiate in good faith with any requesting carrier on the terms and conditions of an agreement under which these various duties will be fulfilled. *See* 47 U.S.C. § 251(c)(1). The Act likewise imposes on requesting carriers the duty to negotiate in good faith. *Id.*

If the parties reach a negotiated agreement, it must be submitted to the state commission for approval. *See* 47 U.S.C. § 252(e)(1). If the parties fail to agree on all terms and conditions, any party to the negotiation may request binding arbitration before the state commission of "any open issues." 47 U.S.C. § 252(b)(1).[1]

The Act provides for judicial review of the commission's decisions in federal district court. *See* 47 U.S.C. § 252(e)(6). The case at bar is an action for judicial review under this provision.

### *Background—The Case at Bar*

■ Defendant GTE Florida, Incorporated ("GTE") is the incumbent local exchange carrier in parts of the State of

---

1. If the state commission chooses not to act on either a negotiated agreement or request for arbitration, the Federal Communications Commission must assume the responsibilities of the state commission. *See* 47 U.S.C. § 252(e)(5).

Florida. Plaintiff AT & T Communications of the Southern States, Inc. ("AT & T") is a competitor. In accordance with the Telecommunications Act of 1996, GTE and AT & T entered negotiations for an agreement under which AT & T would purchase certain services for resale, would interconnect with GTE's facilities, and would have access to GTE's network elements. They were unable to agree on all terms and conditions of an agreement and thus sought and obtained arbitration before the Florida Public Service Commission. Following an evidentiary hearing, the Florida Commission issued a final arbitration order and, in due course, orders approving the agreement entered between AT & T and GTE as directed by the arbitration order. AT & T now brings this action challenging the Florida Commission's decision in four respects, and GTE counterclaims challenging the decision in one of the same respects and in five additional respects. AT & T has named as defendants GTE, the Florida Commission, and each of its Commissioners in his or her official capacity.[2]

The parties have agreed that this court's review should be conducted based solely on the record as compiled in the Florida Commission. The parties have submitted briefs and presented oral argument, and more recently have submitted supplemental briefs addressing the decision of the United States Supreme Court in *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). This order constitutes the court's ruling on the merits.

Five of the nine issues raised by AT & T and GTE already have been addressed by this court in cases arising from other interconnection agreements; they are resolved in this order primarily by cross-reference to those decisions. The four remaining issues—terminating access charges, the competitor's right to "pick and choose" terms from the incumbent's agreement with any other competitor, charges for operator and directory assistance services, and "number portability"—are addressed for the first time in this order. This order thus resolves each of the nine issues.

### Standard of Review

■ The Telecommunications Act provides for actions such as the case at bar in a single sentence:

In any case in which a State commission makes a determination under [the Act], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of [the Act].

47 U.S.C. § 252(e)(6).[3] The Act does not further specify the standard of review to

---

**2.** An action for judicial review of a state commission's decision may proceed against the individual commissioners in their official capacities in accordance with *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and thus is not barred by the Eleventh Amendment. *See MCI Telecommunications Corp. v. BellSouth Telecommunications, Inc.*, 1997 WL 1133453 (N.D.Fla.1997). I dismiss this case as against the Florida Commission on the grounds that its presence in this case as a defendant is merely redundant to the presence of the Commissioners in their official capacities. *Cf. Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) (approving dismissal of official capacity defendants whose presence was merely redundant to naming of institutional defendant). I thus do not address the substantial issue of whether the Florida Commission has waived its Eleventh Amendment immunity from suit in feder-

al court by choosing to conduct an arbitration and to render a determination explicitly subject to review in federal court. *Compare, e.g., MCI Telecomms. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323 (7th Cir.2000) (finding waiver) *with, e.g., GTE North, Inc. v. Strand*, 209 F.3d 909, 922 n. 6 (6th Cir.2000) (expressing skepticism toward waiver theory). Any ruling on this issue in this case would make no real difference and thus appropriately should be avoided. *Cf. Ashwander v. TVA*, 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

**3.** The "agreement" to which this provision applies is an interconnection agreement of the type here at issue. The "statement" to which this provision applies is a statement of a Bell operating company of generally available terms. *See* 47 U.S.C. § 252(f). No such statement is involved here.

be applied in determining "whether the agreement . . . meets the requirements of" the Act.

For the reasons set forth at length in *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.,* 112 F.Supp.2d 1286 (N.D.Fla.2000), I will review *de novo* issues regarding the meaning and import of the Telecommunications Act, and I will review state commission determinations of how to implement the Act as so construed only under the arbitrary and capricious standard. This apparently is the standard of review advocated by all parties to this proceeding.

### Merits

## I. PRICING

The Telecommunications Act directs state commissions to set "just and reasonable" prices for interconnection and network elements "based on the cost (determined without reference to a rate-of-return or other rate-based proceeding) of providing the interconnection or network element." 47 U.S.C. § 252(d)(1). Both AT & T and GTE challenge the Florida Commission's selection of a pricing methodology, and GTE also challenges the Florida Commission's implementation of its chosen methodology.

### A. Pricing Methodology

The Florida Commission adopted a methodology known as Total Service Long–Run Incremental Cost ("TSLRIC"), which uses the incumbent's current network architecture and future replacement technology as the basis for determining long-run incremental cost. For the reasons set forth in *AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.,* 122 F.Supp.2d 1305 (N.D.Fla.2000), I

reject the parties' challenge to the Florida Commission's adoption of this methodology.[4]

### B. Implementation of Pricing Methodology

GTE also asserts that, even if TSLRIC is an appropriate pricing methodology, the Florida Commission's implementation of this methodology was flawed in four respects. I reject GTE's first, second and fourth assertions because GTE has made no showing that the Florida Commission's actions were arbitrary and capricious or contrary to the Telecommunications Act of 1996. With respect to GTE's third assertion, I direct the defendant Commissioners to provide a further explanation of their decision.

### 1. Universal Service Subsidy

 GTE's first contention is that in setting network element prices, the Florida Commission erred by failing to consider costs GTE incurs to provide "universal service." GTE is wrong.

State commissions historically have pursued a goal of making telephone service available to as many potential users as possible. Thus basic rates have been held low, sometimes below cost, in an effort to make basic telephone service widely affordable. And rates have been held uniform, even to remote locations, so that the high cost of providing lines to remote locations would not mean service would be unavailable there. Local monopoly carriers historically took the loss for providing such service but made it up through rates to other customers or for other types of service.

---

**4.** In resolving this issue in *AT & T v. Bellsouth, supra,* I relied on the decision of the Eighth Circuit in *Iowa Utilities Bd. v. FCC,* 219 F.3d 744 (8th Cir.2000). Six days before my decision in *AT & T v. Bellsouth,* the Eighth Circuit stayed its *Iowa Utilities* decision in relevant part pending disposition of petitions for *certiorari.* I follow the Eighth Circuit's *Iowa Utilities* decision, notwithstanding entry of the stay, for the reasons set forth in my

unpublished order addressing the motion to alter or amend the judgment in that case. *AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.,* 122 F.Supp.2d 1305 (N.D.Fla.2000). As in that case, upon further consideration of this matter by the Florida Public Service Commission, it appropriately may consider any further ruling by the United States Supreme Court in *Iowa Utilities.*

Competition of course will require changes in this approach to universal service. If incumbents attempt to charge above-cost prices to some customers in an effort to offset below-cost prices to other customers, the strategy will not work, because the customers who are charged above-cost prices will simply change to other carriers whose prices are cost-based. The Telecommunications Act recognizes this and establishes a framework for development of a different methodology for pursuing the goal of universal service. *See* 47 U.S.C. § 254.

GTE asserts that in setting the prices GTE charges AT & T for network elements, the Florida Commission was obligated to include an appropriate share of the costs GTE incurs in order to provide universal service, that is, costs GTE incurs not in connection with providing the network elements at issue but instead in connection with providing unrelated local service to unrelated customers. The Florida Commission properly rejected this contention. *See Iowa Utilities Board v. FCC*, 219 F.3d 744, 753 (8th Cir.2000). The "cost" on which the price of a network element must be based is the cost "of providing the ... network element," 47 U.S.C. § 252(d)(1), not the cost of providing some other service. In 47 U.S.C. § 254, the Act provides an entirely different mechanism for securing the fair allocation of the cost of providing universal service. .

### 2. Historic or Embedded Costs

Second, GTE asserts that the Florida Commission was obligated to consider all historic or embedded costs, not just forward-looking costs of providing the service at issue. This is essentially an attack on the TSLRIC methodology. For the reasons set forth in *AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.*, 122 F.Supp.2d 1305 (N.D.Fla.2000), the Florida Commission's adoption of TSLRIC was neither contrary to the Act nor arbitrary and capricious.

### 3. Local Loop Pricing

Third, GTE challenges the prices established by the Florida Commission for local loops. The Florida Commission of course was not obligated to accept GTE's assertions of its alleged cost of providing local loops. Thus, for example, the Commission acted within its discretion in excluding certain building and land costs it determined were not properly allocable to local loops. Nor was the Florida Commission obligated to make a precise mathematical match between some calculation of cost, on the one hand, and its approved prices, on the other. Instead, the Telecommunications Act of 1996 requires only that the price of a network element be "*based* on the cost" of providing the element. 47 U.S.C. § 252(d)(1) (emphasis added). The Act also provides that cost is to be "determined without reference to a rate-of-return or other rate-based proceeding," *id.*, thus making clear that an exact match between cost and prices is not required.

Still, pricing decisions could be used to undermine the purposes of the Act, and a state commission's pricing decisions thus properly are subject to review in district court, under the arbitrary and capricious standard. *See AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.*, 122 F.Supp.2d 1305 (N.D.Fla.2000). With respect to local loops, as with the per message charges at issue in *AT & T v. Bellsouth*, the Florida Commission has provided insufficient explanation for its decision to allow meaningful review. The appropriate course thus is to direct the defendant Commissioners to explain or further consider their decision. *See, e.g., Checkosky v. SEC*, 23 F.3d 452, 462–63 (D.C.Cir.1994) (remanding insufficiently explained administrative decision "so as to afford the agency an opportunity to set forth its view in a manner that would permit reasoned judicial review"; so holding even in the absence of any conclusion that the agency acted arbitrarily or capriciously); *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943)

(recognizing that "courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review").

### 4. Unconstitutional Taking

■ Finally, GTE asserts the Florida Commission's pricing decisions will or may effect an unconstitutional taking of GTE's property without just compensation. GTE has made no showing to this point, however, that any such taking is imminent.

For all that appears in this record, GTE now is facing only reasonably foreseeable developments in a dynamic industry. GTE remains a strong and profitable competitor in that dynamic industry. Nothing in this record suggests that the Florida Commission has reneged on any explicit or implicit promises made to GTE during the monopoly era; nobody promised GTE a world free of rapidly changing technology or the inevitable consequences thereof. Nor is GTE being compelled to sell its services to its competitors below cost or deprived of the opportunity to earn a full and fair return on its investment.

In short, GTE has made no showing that the Florida Commission has effected an unconstitutional taking of GTE's property. I thus uphold the Florida Commission's pricing decisions, except with respect to local loops, on which I remand for further explanation.

## II. GEOGRAPHIC DEAVERAGING

The cost of providing local telecommunications service is higher in some places than in others. Nonetheless, the Florida Commission adopted statewide averaged rates, rather than different rates for different geographic areas. AT & T challenges the use of statewide averaged rates.

For the reasons set forth in *AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.*, 122 F.Supp.2d 1305 (N.D.Fla.2000), I conclude that (1) the Florida Commission's adoption of statewide averaged rates, on a transitional basis, did not violate the Act and was not arbitrary and capricious, but that (2) effec-

tive as of May 1, 2000, the Florida Commission became obligated to deaverage rates over at least three geographic areas, in accordance with 47 C.F.R. § 51.507(f).

Because of the passage of time, it is unclear whether the Florida Commission's decision now under review will continue to have effects inconsistent with 47 C.F.R. § 51.507(f). The defendant Florida Commissioners thus will be directed to reconsider their decision to assure that it does not produce results inconsistent with that rule.

## III. ACCESS CHARGES

■ Long distance or "interexchange" calls—for example, from Miami to Tallahassee—typically are carried from one exchange to another by a long distance or "interexchange" carrier. Such calls typically are carried between the customer or "end user," on the one hand, and the interexchange carrier, on the other hand, by the end user's local carrier. Interexchange carriers pay local carriers for providing this service. The payments are for providing end users access to the interexchange network and thus are known as "access charges." Payments for carrying a call from the end user placing the call to the interexchange carrier are known as "originating" access charges; payments for carrying a call from the interexchange carrier to the end user receiving the call are known as "terminating" access charges.

AT & T asserts that when an interexchange call is terminated to a customer subscribed to AT & T for local service, the local carrier entitled to the applicable terminating access charge is AT & T. GTE asserts that, if AT & T serves its local customer through unbundled network elements obtained from GTE, then GTE is entitled to the applicable terminating access charge.

GTE's position is illogical and does not comport with the purposes of the Telecommunications Act. The reason the Act allows a competitor to obtain network elements

from an incumbent is so that the competitor may use those network elements to provide services in competition with the incumbent. When the competitor uses those network elements, the competitor must pay the incumbent the appropriate rate for use of the network elements, and the competitor may charge appropriate fees for the service it provides. Thus the incumbent is compensated for its elements by the competitive carrier using those elements, and the competitor is compensated for the service it provides using the network elements just as any local carrier is compensated for providing services of the same type. When the service is terminating an interexchange call, the compensation that the competitor receives is the appropriate terminating access charge payable by the interexchange carrier. Any requirement that that access charge be paid to the incumbent local exchange carrier rather than to the competitor would undermine the Act's goal of fostering competition and render rather pointless the incumbent's obligation to make its network elements available to the competitor for the purpose of, among other things, allowing the competitor to provide terminating access service.[5]

That this is the correct result is confirmed by the binding FCC regulation addressing this very issue:

Neither the interstate access charges described in part 69 of this chapter nor comparable intrastate access charges shall be assessed by an incumbent LEC [local exchange carrier] on purchasers of elements that offer telephone exchange or exchange access service.

47 C.F.R. § 51.515(a). According to the plain terms of this regulation, which became effective as of June 30, 1997, GTE

cannot collect access charges on account of access services provided by AT & T by means of network elements purchased by AT & T from GTE.[6]

The Florida Commission did not explicitly resolve this issue in the orders now under review. The Arbitration Order provides only that terminating access charges are owed to "the company terminating a toll call." (Arbitration Order at 124). In finally approving the interconnection agreement entered by the parties pursuant to the Arbitration Order, the Florida Commission noted the disagreement between AT & T and GTE on this issue but left the matter open for resolution on a "case by case basis, either by the parties themselves, or through the Commission's complaint process." (Final Order Approving Arbitration Agreement Between AT & T and GTE, Order No. PSC–97–0585–FOF–TP (May 22, 1997) at 51). In this court, the Florida Commission apparently has recognized the binding force of the FCC regulation for services rendered after June 30, 1997.

So that appropriate action may be taken to implement the FCC regulation as it applies to this interconnection agreement, the defendant Commissioners will be directed to address this issue further.

## IV. OPERATOR SERVICES COSTS

A different method by which the Telecommunications Act of 1996 allows a competitor to compete with an incumbent is by buying services from the incumbent for resale to the competitor's own customers. Invoking this method, AT & T seeks to resell to its own customers local service obtained from GTE. AT & T does not, however, always seek to use GTE's operator services; AT & T intends, instead, to

5. This analysis is consistent with the decision in *AT&T Comms. Systems v. Pacific Bell*, 203 F.3d 1183 (9th Cir.2000) (holding that an incumbent may not include switched access charges in the pricing of unbundled network elements).

6. The FCC did allow an incumbent to collect such charges on an interim basis until June

30, 1997, in order to ameliorate the effects of the loss of those charges, which had been used to compensate incumbents for their obligation to serve all customers at sometimes below-cost rates (that is, their "universal service" obligation). The Act established an alternative universal service mechanism phased in over time.

provide its own operator services to its customers. AT & T asserts that, under 47 U.S.C. § 252(d)(3), the price charged by GTE to AT & T for local service provided for resale must be reduced by the cost of operator services avoided by GTE. The Florida Commission made no such reduction.

■ For the reasons set forth in *AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.*, 122 F.Supp.2d 1305 (N.D.Fla.2000), I conclude that the Florida Commission erred when it refused to reduce the wholesale rates charged to AT & T by the amount of costs actually avoided by GTE in the provision of local service for resale. The defendant Commissioners will be directed to reconsider this issue.[7]

## V. *COMBINING UNBUNDLED NETWORK ELEMENTS*

As set forth above, the Telecommunications Act allows a competing carrier to interconnect with an incumbent's network and also to compete with the incumbent either (1) by obtaining local services from the incumbent at wholesale prices for resale to the competing carrier's customers or (2) by obtaining from the incumbent "network elements"—parts of the incumbent's telecommunications system—for use in providing service to the competing carrier's own customers. GTE initially asserted that if AT & T provided service entirely over GTE's network elements, AT & T properly should be required to pay GTE the wholesale rate for the entire service; AT & T could not properly pay only the sometimes substantially lower aggregate price of the various network elements that, when combined, could be used to provide complete service. GTE now also asserts that, even if AT & T properly may pay only the aggregate price of the various network elements, those elements must be combined by AT & T itself; GTE asserts it has no obligation to combine network elements for use by AT & T in providing complete service.

For the reasons set forth in *AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.*, 122 F.Supp.2d 1305 (N.D.Fla.2000), GTE's contention that AT & T must pay the wholesale rates for complete service, whenever AT & T provides such service entirely through network elements obtained from GTE, is incorrect.

That leaves for consideration the issue of whether GTE or AT & T must do the combining of the network elements. In the case at bar, as in *AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.*, 122 F.Supp.2d 1305 (N.D.Fla.2000), the Florida Commission asserts that in the orders under review, it did not address this issue. But here, as there, the Florida Commission did rely in its orders on 47 C.F.R. § 51.315(c), which by its terms would have required GTE, not AT & T, to do the combining. That regulation now has been invalidated by a controlling decision of the United States Court of Appeals for the Eighth Circuit. *See Iowa Utilities Bd. v. FCC*, 219 F.3d 744, 759 (8th Cir.2000). Because the Florida Commission made its decision in reliance on the now-invalidated rule, the appropriate course here, as in *AT & T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.*, 122 F.Supp.2d 1305 (N.D.Fla.2000), is to direct the defendant Commissioners to reconsider the matter. *See, e.g., SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).[8]

---

7. Although by rule the FCC originally required the exclusion not only of costs that "will be avoided" but also costs that "can be avoided," 47 C.F.R. § 51.609(b), the Eighth Circuit now has invalidated that rule, squarely holding that only actually avoided costs must be excluded from wholesale rates. *See Iowa Utilities Bd. v. FCC*, 219 F.3d 744, 755 (8th Cir.2000). The Florida Commission must exclude from the wholesale rates charged to AT & T only operator service costs that are actually avoided by GTE.

8. In further considering this matter, the Florida Commission will be bound by 47 C.F.R. § 51.315(b), which prevents an incumbent that is providing network elements to a competitor from separating any such network elements that the incumbent currently combines. In *Iowa Utilities*, the Supreme Court upheld

## VI. PICK AND CHOOSE

The Telecommunications Act of 1996 seeks to prevent an incumbent (or any carrier) from favoring one competing carrier over another. The Act does so by requiring each carrier to make available to any competitor the same interconnection, service or network element terms that the carrier has made available to any other competitor. Thus the Act provides:

> A local exchange carrier shall make available any interconnection, service, or network element provided under an agreement approved under this section to which it is a party to any other requesting telecommunications carrier upon the same terms and conditions as those provided in the agreement.

47 U.S.C. § 252(i). The FCC has made clear by regulation that this means the competitor may pick and choose among the various provisions of an agreement between other carriers; the competitor need not accept the entire agreement in order to choose one or more individual provisions. *See* 47 C.F.R. § 51.809.

GTE entered an agreement with another carrier, Metropolitan Fiber Systems of Florida, Inc. ("MFS"), that included a provision under which GTE made "dark fiber" available to MFS. Dark fiber is fiber optic cable that is in place but not in active use. Without the associated electronic equipment needed at both ends of the cable, the fiber remains "unlit" and inactive.

AT & T sought to adopt the terms of the GTE MFS agreement with respect to dark fiber. GTE disputed AT & T's right to do so, asserting that a carrier cannot properly "pick and choose" among provisions of an agreement between other carriers and that dark fiber is not a "network element" that an incumbent must make available to competitors.

The Florida Commission resolved the issue in favor of AT & T. I uphold its decision. First, although the validity of the FCC regulation, 47 C.F.R. § 51.809, was in dispute when the Florida Commission acted and when GTE filed its counterclaim in this court, the Supreme Court now has upheld the regulation. *See AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). The regulation is valid and binding and squarely authorizes a competing carrier such as AT & T to "pick and choose" provisions of an agreement between other carriers, precisely as AT & T has done here. *Southwestern Bell Telephone Co. v. Waller Creek Comms., Inc.*, 221 F.3d 812 (5th Cir.2000), is squarely on point and reaches this same conclusion.

Thus allowing a carrier to "pick and choose" provisions from an agreement between other carriers is required by a valid FCC regulation. This result also is fully consistent with the plain terms of the statute itself and with the statute's purpose of promoting a level playing field as between different competitors. The Florida Commission did not err in allowing AT & T to adopt the dark fiber provision GTE had made available to another carrier.[9]

## VII. WHOLESALE PRICING

The Telecommunications Act of 1996 imposes on any incumbent local exchange carrier the duty

that rule. *See Iowa Utilities*, 525 U.S. at 394, 119 S.Ct. 721. The Supreme Court also noted that the arguments on that issue in that case might be "academic" in light of the Court's simultaneous invalidation of the FCC's "necessary" and "impair" rule. *See Iowa Utilities*, 525 U.S. at 392, 119 S.Ct. 721. Nothing in this order forecloses the Florida Commission from taking otherwise proper action in response to the Supreme Court's decision on the "necessary" and "impair" rule. *Cf. AT&T Comms. of Southern States, Inc. v. Bellsouth Telecomms., Inc.*, 229 F.3d 457 (4th Cir.2000) (remanding this issue for further consideration in light of the changing law concerning 47 C.F.R. § 51.315(b) and the Supreme Court's "necessary" and "impair" decision).

9. I note also that GTE's assertion that "dark fiber" is not a network element within the meaning of the Act is incorrect, for the reasons set forth in *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 112 F.Supp.2d 1286, 1294–95 (N.D.Fla.2000).

to offer for resale at wholesale rates any telecommunications service that the carrier provides at retail to subscribers who are not telecommunications carriers....

47 U.S.C. § 251(c)(4). Wholesale rates under this provision must be determined

> on the basis of retail rates charge[d] to subscribers for the telecommunications service requested, *excluding* the portion thereof attributable to any marketing, billing, collection, and *other costs that will be avoided by the local exchange carrier.*

47 U.S.C. § 252(d)(3) (emphasis added).

Among the services that AT & T obtains from GTE under this provision are operator and directory assistance services. The Florida Commission calculated the appropriate wholesale rate for these services as 13.04% below the retail rate. GTE asserts this was arbitrary and capricious, because, it says, there are no avoided costs when these services are provided to AT & T rather than to a retail customer.

The assertion that there are *no* avoided costs when these services are provided to a carrier rather than to retail customers makes no sense. On the other hand, neither the Florida Commission nor AT & T has called my attention to any evidence in the record supporting the 13.04% discount. Absent an explanation of the Florida Commission's reasoning or a citation to evidence supporting the result, I conclude that the appropriate disposition of this issue is to direct the defendant Commissioners to explain or further consider their decision. *See, e.g., Checkosky v. SEC,* 23 F.3d 452, 462–63 (D.C.Cir.1994) (remanding insufficiently explained administrative decision "so as to afford the agency an opportunity to set forth its view in a manner that would permit reasoned judicial review"; so holding even in the absence of any conclusion that the agency acted arbitrarily or capriciously); *SEC v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (recognizing that "courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review").

## VIII. *LIMITATION OF LIABILITY*

■ As part of its petition for arbitration before the Florida Commission, GTE sought to include in the interconnection agreement a limitation-of-liability provision making clear that in the event of any failure to deliver services as agreed, it would not be liable for consequential damages. The Florida Commission refused to arbitrate this issue.

For the reasons set forth in *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.,* 112 F.Supp.2d 1286 (N.D.Fla.2000), I conclude that when the Florida Commission undertook to arbitrate the overall dispute between GTE and AT & T, it became obligated to arbitrate "any open issues." 47 U.S.C. § 252(b)(1). Whether a limitation-of-liability provision should be included in the parties' agreement was an "open issue."

This does not mean, of course, that the Florida Commission was obligated to require a limitation-of-liability provision. Had the Florida Commission decided, as a matter of discretion, not to adopt such a provision, GTE would bear a substantial burden in attempting to demonstrate that such a determination was contrary to the Telecommunications Act or arbitrary and capricious. But the Florida Commission made no such determination, instead declining to address the issue. The defendant Commissioners will be directed to arbitrate this issue.

## IX. *NUMBER PORTABILITY*

■ An important issue for any customer contemplating changing local telephone carriers is whether the customer will be able to retain the same telephone number. Changing telephone numbers is inconvenient and often expensive. If the incumbent local exchange carrier could prevent customers from keeping their same telephone numbers when changing carriers, the incumbent could significantly forestall competition..

Apparently recognizing this, Congress imposed on incumbent local exchange carriers "[t]he duty to provide, to the extent technically feasible, number portability in accordance with requirements prescribed by the Commission." 47 U.S.C. § 251(b)(2). The FCC has interpreted this provision as applying to "all forms of number portability," In re Telephone Number Portability, Fourth Memorandum Opinion and Order on Reconsideration, 1999 WL 503613(FCC) (July 16, 1999), and as requiring incumbents to provide number portability to a requesting competitor "as soon as reasonably possible." 47 C.F.R. § 52.27.

In accordance with these provisions, the Florida Commission required GTE to provide certain number portability solutions to AT & T. GTE objects, asserting that it does not provide those same number portability solutions to itself, and that, if the Florida Commission's ruling is upheld, AT & T thus will receive service superior to what GTE provides itself. GTE says this contravenes 47 U.S.C. § 251(c)(2)(C), which requires an incumbent to provide interconnection between a competitor's facilities and the incumbent's facilities "that is at least equal in quality to that provided by the local exchange carrier to itself." GTE also cites the statement in *Iowa Utilities Board v. FCC*, 219 F.3d 744, 758 (8th Cir.2000), addressing a different issue, that "nothing in the statute requires the [incumbent] to provide superior quality interconnection to its competitor."

For three reasons, I conclude that the Florida Commission's rejection of GTE's position was not contrary to the Telecommunications Act and was not arbitrary or capricious. First, the Florida Commission's decision is fully supported by the Act's number portability provision, 47 U.S.C. § 251(b)(2), and the regulations thereunder. Second, the decision is fully supported by the pro-competitive goal of the number portability provision. Third, GTE's reliance on 47 U.S.C. § 251(c)(2)(C) is misplaced, because that provision only requires interconnection "at least equal in quality" to that provided by the incumbent

to itself. "At least equal" does not mean "no greater than," and, in any event, the general interconnection standard of § 251(c)(2)(C) certainly was not intended to undermine the specific separate requirement for number portability as set forth in § 251(b)(2).

I thus uphold the Florida Commission's determination on number portability.

### Conclusion

The Florida Commission's determinations were consistent with the Telecommunications Act of 1996 and not arbitrary and capricious with respect to overall pricing methodology, statewide averaged rates on a transitional basis, a carrier's ability to pick and choose provisions from an interconnection agreement between other carriers, and number portability. The Florida Commission's failure to exclude the avoided cost of operator services from wholesale rates for local service and refusal to arbitrate the issue of a limitation-of-liability clause contravened the Telecommunications Act. The Florida Commissioners will be directed to explain or consider further their determinations on other issues as set forth above.

In accordance with these rulings,

IT IS ORDERED:

The clerk shall enter judgment stating, "The Florida Public Service Commission's Final Order on Arbitration and Final Order Approving Arbitration Agreement Between AT & T and GTE are affirmed with respect to overall pricing methodology, adoption of statewide averaged rates on a transitional basis, allowing AT & T to pick and choose the dark fiber provision from an agreement between GTE and another carrier, and number portability; declared invalid with respect to failure to exclude the avoided cost of operator services from wholesale rates for local service and failure to arbitrate the issue of whether the interconnection agreement between AT & T and GTE should include a limitation-of-liability provision; and vacated for further explanation or consider-

ation with respect to the price of local loops, continuing effects of statewide averaged rates, the parties' respective rights to terminating access charges, combining of network elements, and wholesale pricing of directory assistance and operator services, all as set forth in the Order on Merits entered December 12, 2000. Defendant Commissioners of the Florida Public Service Commission shall conduct further proceedings consistent with the Court's Order on Merits, this judgment, and any decision of the United States Supreme Court on review of *Iowa Utilities Bd. v. FCC*, 219 F.3d 744 (8th Cir.2000). All claims against the Florida Public Service Commission, in its name, are dismissed as redundant." The clerk shall close the file.